NUMBER 13-09-00103-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      
 
THE CHARLES MACHINE WORKS, INC.,                                 Appellant,

v.
 
BUTLER RENTAL AND SALES, INC.,                                        Appellee.
                                                                                                                      

On appeal from the 94th District Court 
of Nueces County, Texas.
                                                                                                                       

OPINION

Before Justices Yañez, Benavides, and Vela
Opinion by Justice Yañez
          Appellant, Charles Machine Works, Inc. (“Charles”), appeals the trial court’s order
denying its motion for summary judgment and granting summary judgment in favor of
appellee, Butler Rental and Sales, Inc. (“Butler”), on Butler’s statutory claim for indemnity
for losses arising out of a products liability suit.


 By four issues, Charles contends that the
trial court erred in granting summary judgment on Butler’s chapter 82 indemnity claim
because Charles owed no duty to indemnify Butler for sums that Butler paid in settlement
of claims for which Butler was independently liable.


 We affirm. 
I. Background 
          In April 2006, while inspecting a ditch being dug at a construction site, Manuel
Aldape Duron Jr. was killed by a Ditch Witch trencher manufactured by Charles and leased
to Duron’s company by Butler. In April 2007, Duron’s survivors (“the plaintiffs”) sued
Charles and Butler, alleging several products-liability and negligence theories against
Charles and negligence theories against Butler.


 In its original answer, Butler asserted a
cross-claim against Charles for statutory indemnity pursuant to chapter 82 of the civil
practice and remedies code.


 The plaintiffs filed an amended petition on May 29, 2007. 
          By a letter dated January 4, 2008, Charles offered to indemnify Butler for claims that
the trencher was defective, but refused to provide indemnity for any negligence claims
against Butler. The letter offered to reimburse Butler for its reasonable attorneys’ fees “in
defending the negligence claims successfully by obtaining a defense verdict or a dismissal
with prejudice.” Charles did not receive a response to its offer. 
          On March 14, 2008, Charles executed a confidential settlement agreement with the
plaintiffs, by which the plaintiffs settled and released all product liability claims against both
Charles and Butler. However, the agreement expressly did not release the plaintiffs’
“claims based on Butler’s negligence, intentional misconduct or other act[s] or omission[s]
for which Butler is independently liable.”


 On March 24, 2008, Butler filed a supplemental
answer, in which it (1) re-asserted its cross-claim against Charles for statutory indemnity
and (2) asserted the affirmative defense of release, contending that the March 14, 2008
settlement agreement released all claims against it.



          On May 29, 2008, Butler sent a letter to Charles, advising that it had settled with the
plaintiffs for $75,000, without admitting any fault. Butler’s letter sought indemnity from
Charles for the $75,000 settlement amount, plus attorneys’ fees and costs, pursuant to
chapter 82 of the civil practice and remedies code.


 On August 4, 2008, the trial court
issued an “Agreed Order of Dismissal” in Butler’s favor, dismissing with prejudice “all of the
[plaintiffs’] claims that have been asserted, or may have been asserted” by the plaintiffs
against Butler. Thus, as of August 4, 2008, none of the plaintiffs’ claims against Butler
remained pending.
          On August 19, 2008, Charles filed a traditional motion for summary judgment,
arguing that it was not obligated to indemnify Butler for the $75,000 in settlement monies
because those funds were paid to release Butler for its own independent negligence. 
According to Charles’s motion, “there is evidence to suggest Butler was independently
liable for Plaintiffs’ damages. The payment of $75,000 to obtain a release from any further
liability is evidence that a portion of Plaintiffs’ loss is attributable to Butler’s independent
negligence.” Charles also cited, as evidence of Butler’s independent liability, a statement
taken from the plaintiffs’ safety expert report asserting that Butler failed to properly train
and warn customers of the dangers associated with using the Ditch Witch.


 
          In support of its motion, Charles attached the following summary judgment
evidence: (1) its January 4, 2008 letter offering to indemnify Butler for products-liability
claims; (2) an affidavit by Robert D. Tomlinson, Charles’s counsel, which verified that the
January 4, 2008 letter offered to indemnify Butler for products-liability claims, but not for
Butler’s own negligence; stated that the only response was Butler’s May 29, 2008 demand
letter; and verified “Exhibit D,” describing the claims released by the settlement agreement,
as an exhibit incorporated into the March 14, 2008 settlement agreement; (3) an excerpt
from the plaintiffs’ expert report; (4) “Exhibit D” to the motion, entitled “Exhibit ‘A’ to
Settlement Agreement Executed March 14, 2008,” releasing all products-liability claims
against Charles and Butler; and (5) the May 29, 2008 letter from Butler demanding
indemnity. 
          On September 2, 2008, Butler filed a traditional and no-evidence motion for
summary judgment,


 which included a response to Charles’s motion and objections to (1)
Nelson’s report as summary judgment evidence and (2) the characterization of Butler’s
settlement as evidence of its independent culpability. In its motion, Butler asserted that (1)
it was entitled to statutory indemnity unless Charles could prove the statutory
exception—that Butler’s independent negligence caused the plaintiffs’ injuries—and (2)
Charles could not prove that Butler’s independent negligence caused the plaintiffs’ injuries. 
Butler argued that Charles had the burden to prove Butler’s independent culpability, and
that the evidence fails to establish any such independent culpability. 
          In support of its motion for summary judgment, Butler attached the following as
evidence: (1) an affidavit by its counsel, Will W. Pierson, which (a) verified Exhibits 1A
through 1E; (b) explained why Butler’s $75,000 settlement of the plaintiffs’ claims was
reasonable; and (c) outlined and explained Butler’s attorneys’ fees and expenses in
defending against the plaintiffs’ claims; (2) copies of the plaintiffs’ original and first
amended petitions; (3) a copy of Charles’s designation of experts;


 (4) excerpts from the
deposition of Rich Lambert, an employee of Charles and designated as an expert witness
by Charles;


 (5) Pierson’s curriculum vitae; and (6) a copy of Charles’s objections and
responses to discovery requests sent by Butler. 
          Butler’s motion asserts that it is entitled to judgment on both traditional and no-evidence grounds. Butler argues that to avoid its duty to indemnify, Charles was required
to prove Butler’s independent culpability in causing the plaintiffs’ injuries. In the section of
its motion urging judgment on traditional grounds, Butler points to statements made by
Charles’s own experts, Dr. Way Johnston and Rich Lambert. Specifically, Butler cites a
statement in Johnston’s report that “there is no evidence of any negligence on the part of
Butler Rental and Sales that caused the accident and resulting death of Manuel Duron.” 
Butler also cites a section in Lambert’s report noting that the Ditch Witch was in “excellent
condition,” “operating normally,” and that the operator’s manual was on the machine. 
          In the no-evidence section of its motion, Butler argues that Charles has no evidence
that any independent culpability by Butler caused the plaintiffs’ injuries, and thus, Charles
does not meet the exception provided in section 82.002(a).


 Butler argues that Charles’s
evidence—the statement of Dr. Nelson that Butler was guilty of two omissions and Butler’s
settlement with the plaintiffs—is not competent evidence. Butler contends that the
excerpts from Dr. Nelson’s report are not competent summary judgment evidence
because, among other reasons, the report is unauthenticated and unsworn and Dr.
Nelson’s statements are conclusory and lack a reliable foundation. With respect to Butler’s
settlement with the plaintiffs, Butler cites this Court’s opinion in Oasis Oil Corp. v. Koch
Refining Co.


 and the Texas Supreme Court’s opinion in General Motors Corp. v.
Hudiburg Chevrolet


 in support of its position that its settlement with the plaintiffs did not
terminate its indemnity claims. Thus, Butler argues, because Charles’s evidence of
Butler’s independent culpability is not competent summary judgment evidence, Charles has
no evidence to support its affirmative defense.
          On September 16, 2008, Charles filed a response to Butler’s motion for summary
judgment. As evidence of Butler’s independent culpability, Charles offered the following
summary judgment evidence: (1) excerpts from Nelson’s deposition testimony; (2) an
excerpt from Nelson’s expert safety report (the same statement earlier submitted by
Charles as summary judgment evidence); (3) a redacted “Exhibit ‘A’ to Settlement
Agreement” dated March 14, 2008; and (4) Tomlinson’s affidavit identifying the exhibits. 
          Charles attached only eight pages from Nelson’s deposition testimony. The
testimony established that Nelson had not conducted any interviews at other companies
that rent trenchers to determine whether those companies provide any training to
customers that rent trenchers. Nelson testified, in pertinent part:
Q [Butler’s counsel]:         Now, you reviewed the deposition testimony of
the [trencher] operator in this case, Alfonso
Cardenas, correct?
 
A [Nelson]:                         Yes.
 
Q:                                       And he in fact had been operating trenchers for
Duron & Duron for over 15 years.
 
A:                                       That’s my understanding, yes.
 
Q:                                       Okay. So you would expect someone with that
length of time operating trenchers to have a lot
of service hours with an RT 40 trencher, or
similar trencher—
 
[Unidentified counsel]:       Object to form.
 
Q [Butler’s counsel]:          —prior to the accident?
 
A:                                       Yes.
 
Q:                                       And you would agree that someone in that
position would be an experienced operator of a
trencher.
 
[Unidentified counsel]:       Object to form.
 
A:                                       He’s got a lot of hours in, let’s put it that way.
 
Q:                                       And you would agree that someone with that
much experience wouldn’t need any type of
basic training on how to operate a trencher.
 
A:                                       I would disagree. Sometimes, you know,
somebody could have 1,500 hours worth of
experience, or they could have one hour of
experience repeated 1,500 times. In other
words, just because he’s got time in doesn’t
mean that he’s been properly trained.
 
. . . .
 
Q:                                       That really wasn’t my question, but I’ll get into
that. My question was, [y]ou agree that Mr.
Cardenas had about 15 years of experience
using trenchers similar to the RT 40 prior to the
accident.
 
A:                                       Yes.
 
Q:                                       He was not a first time user— 
 
A:                                       Correct.
 
Q:                                      —of the RT 40 at the time of the accident.
 
A:                                       That’s my understanding, yes.
 
Q:                                       He wasn’t even a relatively new user of the RT
40 at the time of the accident.
 
A:                                       That’s correct.
 
Q:                                       So you would agree with me that any training
that Butler would have provided to him prior to
the accident wouldn’t have made any
difference,—[


]
 
[Unidentified counsel]:       Objection, form.
 
Q [Butler’s counsel]:         —correct?
 
Inexplicably, the excerpt ends with this question from Butler’s counsel as to whether any
training by Butler would have made a difference—the only question in the record that
arguably addresses whether the plaintiffs’ loss was “caused by” Butler’s alleged failure to
train. Charles chose not to include Nelson’s answer to the question. 
          On September 23, 2008, the trial court apparently heard both motions for summary
judgment.


 On December 18, 2008, the court signed an “Agreed Order of Dismissal,” by
which the plaintiffs dismissed all products-liability claims against Charles and Butler 
pursuant to a settlement agreement. The order notes that “prior to entry of this Order of
Dismissal,” the plaintiffs had settled all their claims against Butler and that an order of
dismissal against Butler was entered on August 4, 2008.
          On January 22, 2009, the trial court issued its “Final Summary Judgment,” by which
the court: (1) overruled Butler’s objections to Charles’s summary judgment evidence; (2)
denied Charles’s motion for summary judgment; (3) granted Butler’s motion for summary
judgment “on all issues”; (4) found that Butler is entitled to recover $75,000 in reasonable
damages, $83,923.25 in reasonable attorneys’ fees and expenses incurred in defending
against the plaintiffs’ claims, and $7,786.19 in reasonable attorneys’ fees and expenses
to enforce its right to indemnification, for a total of $166,709.44 awarded to Butler; and (5)
awarded Butler post-judgment interest and specified amounts for appellate costs in the
event of an unsuccessful appeal by Charles.


 This appeal followed.
II. Standard of Review and Applicable Law 
          Here, Charles’s motion was a traditional motion for summary judgment and Butler’s
motion was a combined “traditional” and “no-evidence” motion. We review the trial court's
grant of summary judgment de novo.


 “When, as here, both parties file a motion for
summary judgment with the trial court, and one is granted and one is denied, the reviewing
court determines all questions presented and renders the judgment that should have been
rendered by the trial court.”


 When the trial court does not specify the basis for its ruling,
it is the appellant's burden on appeal to show that none of the independent grounds that
were asserted in support of summary judgment is sufficient to support the judgment.


 
Thus, when the trial court's order granting summary judgment does not specify the grounds
on which it was granted, we will affirm the summary judgment if any of the advanced
theories support the judgment.



          When a party moves for summary judgment under both rules 166a(c) and 166a(i)
of the Texas Rules of Civil Procedure, we will first review the trial court's judgment under
the standards of rule 166a(i).


 If the appellant fails to produce more than a scintilla of
evidence under that burden, then there is no need to analyze whether appellee's summary
judgment proof satisfies the less stringent rule 166a(c) burden.


 
          Section 82.002(a) of the civil practice and remedies code imposes a duty on
manufacturers to indemnify sellers for a “loss arising out of a products liability action.”


 
“It provides an exception ‘for any loss caused by the seller’s negligence, intentional
misconduct, or other act or omission, such as negligently modifying or altering the product,
for which the seller is independently liable.’”


 Thus, to escape its duty to indemnify, the
manufacturer must establish that the seller’s independent culpable conduct “caused” the
plaintiffs’ loss.


 Until the manufacturer establishes that a seller’s independent conduct
caused the plaintiff’s injury, a mere allegation of negligence in the plaintiff’s pleadings is
sufficient to invoke the manufacturer’s duty to indemnify the seller for all theories properly
joined to a products liability claim.


 As the Texas Supreme Court recently clarified, “what
matters is not merely whether but why a seller is independently liable.”


 “‘[T]he duty to
indemnify under this section . . . applies without regard to the manner in which the action
is concluded’—whether by judgment, settlement, or dismissal.”


 
III. Discussion 
          We begin by addressing Butler’s no-evidence motion that Charles had no evidence
that any independent culpability by Butler caused the plaintiffs’ injuries.


 As noted above,
in response to Butler’s motion, Charles offered: (1) excerpts from Nelson’s deposition
testimony; (2) paragraph 19 from Nelson’s expert report; and (3) “Exhibit A” to the March
14, 2008 settlement agreement. We conclude that none of Charles’s evidence established
that the plaintiffs’ injuries were caused by Butler’s independent culpability.


 
          As noted, Charles was required to prove that Butler’s independent culpability
“caused” the plaintiffs’ injuries.


 Nelson’s deposition testimony established only that: (1) 
Nelson had not contacted other local companies that rent construction equipment to
determine whether those companies provide training to their customers; and (2) in Nelson’s
opinion, although Cardenas had extensive experience operating trenchers and did not
believe he needed training, he may not have been properly trained. The only question in
the excerpted portions of Nelson’s testimony which arguably addressed whether the
plaintiffs’ loss was “caused by” Butler’s alleged failure to train—and therefore, might have
raised a fact question as to causation—was not answered in the excerpted testimony. As
to paragraph 19 in Nelson’s report, the only identifiable alleged “failure” attributable to
Butler is the alleged “failure to properly train [its] rental customers in the safe use of the
rented equipment,” and failure to “warn [its customers] of any potential dangers associated
with its use.” This evidence does not raise a fact question as to whether the plaintiffs’
injuries were “caused by” Butler’s alleged “failure to train” or “failure to warn.”
          With regard to the offer of “Exhibit A” to the March 14, 2008 settlement agreement,
Charles argues that because the March 14, 2008 settlement agreement settled all
products-liability claims against it and Butler, we must necessarily infer that Butler’s
subsequent settlement with the plaintiffs could only have been to release claims for which
Butler was independently liable.


 It is clear, however, that Texas law does not support
Charles’s argument. An inference is insufficient to establish the exception to a
manufacturer’s duty to indemnify; instead, to invoke the exception, a manufacturer must
prove: (1) that the seller was independently culpable and (2) that the seller’s conduct
“caused” the loss.


 As the supreme court explained its decision in Meritor, 
In Meritor, we again refused to limit the indemnity obligation by holding that
Section 82.002(a)’s exception to a manufacturer’s general indemnity
obligation is established only by a finding that a seller’s independent conduct
caused the plaintiff’s injury. Until such a finding is made, a mere allegation
of negligence in the plaintiff’s pleadings is sufficient to invoke the
manufacturer’s duty to indemnify the seller for all theories properly joined to
a products liability claim.[


] 

          The Texas Supreme Court recently clarified several issues concerning the
applicability of section 82.002's exception to a manufacturer’s duty to indemnify.


 In Fresh
Coat, Inc. v. K-2, Inc., numerous homeowners sued: (1) K-2, the manufacturer of allegedly
defective synthetic stucco components; (2) Fresh Coat, the contractor that installed the
product on several homes; and (3) Life Forms, the homebuilder.


 Life Forms sought
indemnity from K-2 and Fresh Coat; Fresh Coat sought indemnity from K-2.


 As the court
explained:
K-2, Life Forms, and Fresh Coat settled with the homeowners. Fresh Coat
paid the homeowners just over $ 1 million. Fresh Coat also settled with Life
Forms, paying $ 1.2 million to cover part of Life Forms' payment to the
homeowners. The case proceeded to trial on various claims the defendants
brought against each other. This appeal concerns claims Fresh Coat
asserted against K-2. Fresh Coat sought indemnity from K-2 for its
settlements with the homeowners and Life Forms, as well as $ 726,642 in
attorney fees. The claims were tried to a jury, and Fresh Coat received a
judgment for all the damages requested.

The court of appeals affirmed the trial court's judgment except with regard
to the settlement payment Fresh Coat made to Life Forms. The court
rejected K-2's arguments that its EIFS[


] was not a "product" and that Fresh
Coat was not a "seller," and upheld the indemnity award as to the payment
to the homeowners. However, with respect to Fresh Coat's settlement with
Life Forms, the court agreed with K-2 that it owed Fresh Coat no statutory
indemnity duty because Fresh Coat would have been liable to Life Forms
under the contract between the two regardless of whether either of them
caused a defect in the EIFS.[


]
 
          The supreme court held that: (1) synthetic stucco is a “product;” (2) Fresh Coat, the
contractor that installed it, is a “seller”; and (3) “the manufacturer’s statutory obligation to
indemnify the contractor covers a settlement payment made by the contractor to the
homebuilder where the contractor may have been independently obligated by contract to
indemnify the homebuilder.”


 K-2 argued that it should not have to indemnify Fresh Coat
for the settlement payment that Fresh Coat made to Life Forms because Fresh Coat’s
contract with Life Forms contained an indemnity provision which required Fresh Coat to
indemnify and hold Life Forms harmless for any homeowner claims regardless of any fault
by Life Forms.


 The supreme court concluded that Fresh Coat was entitled to indemnity
from K-2 for its settlement payment to Life Forms because K-2 had not proven that section
82.002(a)’s exception was applicable.


 The court reasoned:
The court of appeals focused solely on Fresh Coat's independent liability,
and did not find the reason for that liability relevant. Fresh Coat argues that
Section 82.002(a) creates an exception for the manufacturer's duty to
indemnify that only applies when the seller tortiously causes a loss. We
agree with Fresh Coat that K-2 has not proven that Fresh Coat caused the
loss via the type of act or omission contemplated in the statute.
 
Section 82.002(a) excepts the manufacturer from indemnity only when it
proves that a loss was “caused by the seller's negligence, intentional
misconduct, or other act or omission, such as negligently modifying or
altering the product, for which the seller is independently liable.” K-2 argues
it should not be liable for contractual obligations that it was not a party to,
namely, any losses Fresh Coat suffered solely as a result of its contract with
Life Forms rather than as a result of Fresh Coat's products-liability
obligations. But Section 82.002(a) does not exempt manufacturers from
their indemnity obligations for “any loss . . . for which the seller is
independently liable.” Such a reading disregards the 20 words between “any
loss” and “for which . . . .”
 
          . . . . 
 
The 20 words in Section 82.002(a) that K-2 ignores make clear that what is
important is not merely whether a seller is independently liable, but why.
Otherwise, all of those intervening words in Section 82.002(a) would be
needless. Although we have not previously held that what matters is not
merely whether but why a seller is independently liable, this Court has
suggested as much: “To escape this duty to indemnify, the indemnitor must
prove the indemnitee’s independent culpability.” 
 
Section 82.002(a) exempts from indemnity a seller's own “negligence,
intentional misconduct,” or act “such as negligently modifying or altering the
product” for which the seller would be independently liable. Section
82.002(a) does not always exempt losses arising from a contractual
indemnity obligation. We express no opinion as to whether a loss need
always be tortious to fit within the ambit of Section 82.002(a)—the statute
includes “other act[s] or omission[s]” that may not necessarily be tortious. 
On today's facts, though, K-2 has not conclusively established a loss for
which it is exempt from indemnity.[


]
 
          In the present case, even if we accepted Charles’s argument that Butler’s
subsequent settlement with the plaintiffs could only have been to release claims for which
Butler was independently liable, Charles has presented no evidence raising a fact issue
as to why Butler is independently liable. As in Fresh Coat, Charles’s argument urges us
to ignore the twenty words in section 82.002(a) that “make clear that what is important is
not merely whether a seller is independently liable, but why.”


 
IV. Conclusion 
          We hold that Charles presented no evidence raising a genuine issue of fact that any
independent culpability by Butler caused the plaintiffs’ injuries.


 Accordingly, the trial court
did not err in granting summary judgment in Butler’s favor and in denying Charles’s motion
for summary judgment.


 We overrule all of Charles’s issues and affirm the trial court’s
judgment.
 



                                                  
                                                                                         LINDA REYNA YAÑEZ,
                                                                                         Justice

Delivered and filed the
14th day of October, 2010.